682 P.2d 412

**David LOFTS, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable David J. Perry, Judge of the Superior Court,**

and

**Kathleen K. LOFTS (Horne), real party in interest, Respondents.**

No. 17134–SA.

Supreme Court of Arizona, En Banc.

May 7, 1984.

Freidel & Richter by Joseph C. Richter, Phoenix, for petitioner.

Boyle, Eaton & Pecharich by William R. Whittington, Prescott, for respondents.

HOLOHAN, Chief Justice.

By this special action the petitioner seeks to set aside the order of the respondent judge denying full faith and credit to an order of the Superior Court of the State of Washington granting petitioner permanent custody of his minor children.

We accepted jurisdiction of the special action to resolve the issue of conflicting custody orders entered in the State of Washington and this state. We now vacate the order of the respondent judge and give full faith and credit to the custody order entered by the superior court in the State of Washington.

The somewhat complex procedural history of the case is as follows. On September 25, 1980, a Decree of Dissolution of Marriage was entered in Maricopa County, Arizona, which, among other things, awarded the respondent mother custody of the two minor children of the parties with reason-

able visitation by the petitioner. Subsequently, the respondent mother remarried and left the State of Arizona. Petitioner succeeded in locating the respondent and the minor children in the State of Washington in 1982. Petitioner filed an order to show cause and a "Petition for Modification of Decree of Dissolution re: Custody and Visitation" in Stevens County, State of Washington, alleging, among other things, that he had been denied his visitation privileges since June, 1981 and that the children were being subjected to physical abuse. In response to the order to show cause, and after a hearing in which the respondent mother was represented by counsel, temporary custody of the minor children was granted to petitioner on February 6, 1983, by the Washington Superior Court. Prior to the February 6 order, the respondent mother, her husband and the minor children returned to Arizona. The respondent mother did not challenge the temporary custody order in the Washington appellate courts. Petitioner then returned to Arizona, sought, and was granted, a writ of habeas corpus by the Maricopa County Superior Court. On February 18, after a hearing at which petitioner and respondent and respondent's present husband testified, Superior Court Judge Cheryl K. Hendrix found "that the order entered by the State of Washington was valid," and petitioner was permitted to and did take custody of the children.

The respondent mother filed a motion in the Washington Superior Court to stay further proceedings, apparently contesting its jurisdiction and alleging the need to contact the Arizona court for a determination of which state's court had proper jurisdiction. This motion was denied by the Washington trial court on May 19. On May 27 the respondent filed in the Washington Court of Appeals an emergency motion for discretionary review of the order of the superior court. The motion was denied.

On June 4, after a four day hearing in the State of Washington with respondent present and represented by counsel, the Washington trial court made findings of fact and conclusions of law, and awarded permanent custody of the children to petitioner. The respondent did not appeal the order of the Washington Superior Court.

While proceedings were pending in the State of Washington, the respondent on April 27, filed in the Maricopa County Superior Court a "Petition for Order to Show Cause re: Child Custody Modification; Jurisdiction," in which she alleged the pendency of petitioner's Washington petition and asked the Arizona court to find that it had jurisdiction and to request that the Washington action be transferred to Arizona. On approximately May 20, she made a "Motion for Accelerated Hearing for Determination of Forum Inconvenus [sic] Under the UCCJA" in Arizona, claiming that the Washington court should have communicated with the Arizona court to determine the issue of inconvenient forum, and requesting that the Arizona court contact the Washington court regarding the matter. On June 22, Superior Court Judge Robert L. Gottsfield of Maricopa County issued a minute order which stated that, from May 23 to May 31, he "tried unsuccessfully to hold a telephonic UCCJA (Uniform Child Custody Jurisdiction Act) hearing with Judge Sidney R. Buckly, who is assigned the pending Washington matter concerning custody." He further stated that he thought the two judges were mandated to hold such a hearing to determine jurisdiction over the "similar" custody petitions, and that he had "even called the Chief Justice of the Washington State Supreme Court" to ask him to urge Judge Buckly to respond.

Finally, in mid-July, the respondent filed in Arizona a "Petition for Order to Show Cause re: Child Custody," alleging she had resided with the minor children in Maricopa and Yavapai Counties "from September of 1980 to the present, with interim visits to Florida and Washington" except for the time after the habeas decree when the children resided with petitioner in the Phoenix metropolitan area. She further alleged that the parties and the minor children had a closer connection with Arizona than Washington and there existed substantial

evidence in Arizona concerning the children's present and future care, training and personal relationships; and alleged that the Washington court did not have jurisdiction and was an inconvenient forum for the child custody modifications, that its decree should not be afforded full faith and credit, and that the original Arizona Decree of Dissolution should be enforced.

On August 1, a hearing was held before the respondent judge at which the respondent mother, her current husband, and petitioner all testified. Evidence was received which included the minutes of the Washington court hearings and a detailed investigative report by a Washington social worker which had originally been submitted into evidence in Washington. The respondent judge, on September 23, issued a minute order which, without making findings of fact or conclusions of law, found that the Washington orders "are not entitled to full faith and credit" and "should not be enforced by this Court." He further ordered the return of the children to respondent and the payment of child support and fees and costs. Petitioner then sought relief from this court.

The two issues to be decided are whether the Washington court had subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), and, if it did, whether its lack of communication with the Arizona court resulted in the loss of such jurisdiction.

■ If the Washington court lacked jurisdiction, Arizona courts need not be bound by its decision. The full faith and credit clause of the United States Constitution requires that a judgment validly rendered in one state's court be accorded the same validity and effect in every other court in the country as it had in the state rendering it. U.S.Const. art. 4 § 1; *Springfield Credit Union v. Johnson*, 123 Ariz. 319, 599 P.2d 772 (1979). This applies to child custody decrees. *Smart v. Cantor*, 117 Ariz. 539, 574 P.2d 27 (1977). However, foreign judgments may be attacked regarding full faith and credit if, among other things, the rendering court

lacked subject matter jurisdiction. *Phares v. Nutter*, 125 Ariz. 291, 609 P.2d 561 (1980); *Matter of Adoption of Hadtrath*, 121 Ariz. 606, 592 P.2d 1262 (1979). If the Washington court had such jurisdiction, we must respect it.

■ When the rendering court in a *contested* hearing determines it has jurisdiction, its determination is *res judicata* on the jurisdictional issue and cannot be relitigated in another state. *Firedoor Corp. of America v. Tibshraeny Brothers Construction, Inc.*, 126 Ariz. 392, 616 P.2d 67 (App.1980) (regarding personal jurisdiction), 47 Am.Jur.2d, *Judgments* § 933 (1969). This rule applies to subject matter jurisdiction as well as personal jurisdiction. *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Insurance Guaranty Assoc.*, 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982). The court of the second state need only determine that the matter was "fully and fairly litigated and finally decided in the court which rendered the original judgment." *Id.*, 455 U.S. at 706, 102 S.Ct. at 1366, *quoting Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963). Although some courts have held that the issue of jurisdiction may be relitigated in the second state, *see, e.g. Weinstein v. Talevi*, 4 Conn.Cir. 330, 231 A.2d 660 (1966), *citing Lampson Lumber Co. v. Hoer*, 139 Conn. 294, 93 A.2d 143 (1952); *Shanklin v. Bender*, 283 A.2d 651 (App.D.C.1971); *Picking v. Local Loan Co.*, 185 Md. 253, 44 A.2d 462 (1945), we think that view is inconsistent with the policy of full faith and credit and the principle of comity between courts of sister states. Moreover, "[p]ublic policy dictates that there be an end to litigation; that those who have contested the issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Ass'n.*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931).

■ We therefore need to determine whether the issue of subject matter juris-

diction was fully and fairly considered and determined by the Washington court. The Washington court in its final order concluded it had "jurisdiction over the parties in the subject matter in this action." While we do not have the record of the Washington proceedings before us, and the order itself does not indicate that subject matter jurisdiction has specifically been contested and adjudicated, we think the contents of the order amply support such a conclusion. The findings of fact in the order were replete with findings as to respondent's residency and travels from state to state which could be used to find jurisdiction under the "significant connection with this state" and "substantial evidence concerning the child's present or future care" requirements of UCCJA § 3(a)(2); A.R.S. § 8–403(A)(2); West's RCWA 26.27.-030(1)(b). In addition, further findings of fact regarding mistreatment and abuse of the children also support jurisdiction under the "emergency" protection provision of UCCJA § 3(a)(3). A.R.S. § 8–403(A)(3); West's RCWA 26.27.030(1)(c).

Perhaps even more compelling, copies of Washington court documents submitted to this court indicate that respondent, prior to trial, made a motion to strike a trial setting, apparently on the basis of lack of jurisdiction, which, after a hearing, was denied by the trial court, and respondent's application for discretionary review of the order in the Washington Court of Appeals was denied because the trial court had not committed error "in that the jurisdiction of the Stevens County Superior Court is *arguably proper under RCW 26.27.030(1)(b)*." (emphasis added).

█ The Washington court judgment, being a duly authenticated judgment of a court of general jurisdiction of a sister state, is *prima facie* evidence of that court's jurisdiction to render it and of the right which it purports to adjudicate. *Barber v. Barber*, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944); *Bebeau v. Berger*, 22 Ariz. App. 522, 529 P.2d 234 (1974). Having examined the judgment and pre-trial rulings, we conclude that the matter of juris-

diction was fully and fairly litigated by the Washington courts and that the judgment is entitled to full faith and credit by the Arizona courts.

The respondent mother, however, argues that the Washington court had an obligation to confer with the Arizona court on the question of which court should take jurisdiction and that its failure to do so voids its jurisdiction. Respondent points to UCCJA § 6(b) (A.R.S. § 8–406(B)) which provides in part "Before *hearing* the petition.... [i]f the court has reason to believe that proceedings may be pending in another state it *shall* direct an inquiry to the state court administrator or other appropriate official of the other state." (Emphasis added). We also note that subsection c of the same section says in part " * * * If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum." These provisions complement UCCJA § 7 (A.R.S. § 8–407) which provides a method for a court to determine whether it is an inconvenient forum for the action and thus should allow another state to assume jurisdiction.

█ We do not agree with petitioner's contention that respondent's Arizona "Petition for Order to Show Cause re: Child Custody Modification; Jurisdiction" of April 27th was not a "proceeding" under § 2(3) of the UCCJA (A.R.S. § 8–402(3)). A petition requesting the Arizona court to find it has jurisdiction and to arrange with Washington to transfer the cause of action to Arizona was essentially a petition for a child custody proceeding in this state. The Commissioner's Note to § 2, the UCCJA definitional section, specifically notes that "[s]ubsection (3) indicates that 'custody proceeding' is to be understood in a broad sense." 9 Uniform Laws Annotated, UCCJA, Commissioner's Note § 2, p. 120 (1979).

█ Clearly the Washington court was on notice from respondent's Washington motion to stay proceedings and Judge

Gottsfield's attempt at telephonic communication that proceedings were pending in Arizona. Thus we believe that the Washington court had a continuing obligation to contact and communicate with the Arizona court. *See Loper v. Superior Court,* 126 Ariz. 14, 612 P.2d 65 (App.1980).

 However, the provisions for communications between courts of different states in the UCCJA are procedural and do not involve the question of jurisdiction. *See, Estes v. Superior Court,* 137 Ariz. 515, 672 P.2d 180 (1983) (A.R.S. §§ 25–331 and 8–403 are jurisdictional statutes in child custody matters; other statutes are procedural). The Washington court action had priority in time over the Arizona court action, and, since the Washington court, as noted before, had jurisdiction of the subject matter and the parties, it had discretion whether it would surrender jurisdiction on the basis of being an inconvenient forum. *See* UCCJA §§ 6(a) & 7(a) and Commissioner's Note to § 6; West's RCWA 26.27.-060(1) and 26.27.070(1); 28 U.S.C.A. § 1738A(g); *Loper v. Superior Court, supra;* R. Couch, *Interstate Custody Litigation* 17 (1981). While we do not condone the actions of the Washington court in avoiding communications with our superior court, the respondent's remedy for such a procedural infraction is vested with the appellate courts in the State of Washington. *See Irene R. v. Inez H.,* 96 Misc.2d 947, 410 N.Y.S.2d 53 (Fam.Ct.1978); *In re Marriage of Weinstein,* 87 Ill.App.3d 101, 42 Ill.Dec. 243, 408 N.E.2d 952 (1980). The Arizona court was not entitled to assume jurisdiction on grounds of noncommunication with it by the Washington court.

The respondent judge erred in not giving full faith and credit to the orders of the Washington court, and it was an abuse of discretion for the respondent judge not to enforce the orders of that court.

The orders of the respondent judge are vacated and the respondent judge is directed to dismiss the petition of the respondent mother.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.